THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KATHLEEN BENTLEY, Defendant-Appellant.

First District (3rd Division)   No. 87—2016

Opinion filed February 8, 1989.

John T. Kelly, of Orland Park, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Jerry D. Bischoff, and David G. Fischer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a bench trial, defendant Kathleen Bentley was convicted of criminal damage to property and driving under the influence of alcohol. The court sentenced defendant to one year's court supervision with a condition of eight hours of community service and a $90 fine. In a separate hearing, the court denied defendant's petition to rescind a statutory summary suspension of her driving privileges for refusal to submit to a breathalyzer test. Defendant appeals, contending that there was insufficient proof that she drove on a public highway; that there were insufficient grounds to believe she was drinking alcohol; that the police failed to offer her a blood test when she did not blow a sufficient air sample into the breathalyzer; and that she was not proved guilty beyond a reasonable doubt of driving

while under the influence of alcohol.

Marianne Sink testified that on February 22, 1987, at about 7 p.m., she was in an apartment at 1608 Memorial Drive, Calumet City, Illinois, watching for a friend's arrival at a surprise party, when she looked out the third-floor window and saw a car drive down the street, slow down and turn into the driveway of the apartment building. Sink testified that the vehicle then struck the rear of her car, which was parked in the driveway, and pushed her car about 15 feet up the driveway. Sink and several others went down to the driveway. Sink observed defendant at the wheel of the car, which was still moving forward. Defendant yelled that they could not park in her driveway, and she pushed Sink's car up another 15 feet, leaving skid marks on the driveway. Defendant exited the car and had difficulty walking and maintaining her balance. She held onto the car as she walked, then staggered 20 feet to the building. She fell while walking up the stairs. Sink had difficulty understanding what defendant said because her speech was so slurred.

Timothy Barrett, a Calumet City police officer, testified that at 7:04 p.m. he received a report of an automobile accident and dispute between neighbors. He found defendant's car with its front resting against the rear bumper of Sink's car in the driveway. Skid marks were present. Barrett went immediately to defendant's apartment. Defendant opened the door and said, "I screwed up. It is my driveway. They shouldn't have parked there." Barrett noted a strong odor of alcohol on defendant's breath. Her speech was slurred, she swayed and staggered, and she could not even walk through the living room without support. Based on his experience as a police officer, Barrett concluded defendant was intoxicated, and he arrested her. Defendant needed assistance getting down the stairs of the apartment building.

Defendant also needed help walking from her home out to the police car and into the police station. She was informed that the failure to consent to a test of breath, blood or urine would result in the statutory summary suspension of her license. Defendant began to blow into the breathalyzer machine but suddenly threw down the mouthpiece and stated that she was a taxpayer, that she did not have to blow into the machine, and that she knew plenty of cops. Barrett testified that defendant was talking while she had the mouthpiece in her mouth and thus did not blow into the machine hard enough. After she tried the breath test, defendant informed the breathalyzer operator that she suffered from emphysema.

Defendant failed every field sobriety test she was given. She could not stand on one foot and balance, staggered when she tried to

walk a straight line, and completely missed the finger to nose test with both hands. Barrett testified that defendant was asked by the breathalyzer operator what she had been doing for the last three hours. She replied, "I'd been drinking. So what?" Barrett believed the breathalyzer operator included that admission in her report. In filling out a criminal report, Barrett recorded defendant's negative response to his question of whether she had been drinking.

Defendant testified that when she found the car blocking her driveway, she honked the horn repeatedly. She then walked through the building, knocking on doors, in an attempt to find the car's owner. Paul Sink came out and they argued. Sink started the car, bumping defendant's car as he did so. Defendant testified that she then pushed the other car up the driveway because she was furious. Defendant testified that she went to her apartment and had a couple of glasses of wine before Barrett arrived. She denied drinking any alcohol prior to the accident. She stated she attempted the breath test three times, and that she informed the police she had emphysema, high blood pressure, heart disease and diabetes. Defendant testified further that she had unsuccessful surgery on her feet, and she offered to show the court the scars on her feet.

Heatherlynn Bentley, defendant's 18-year-old daughter, testified that she heard her mother honking the horn in the driveway. She looked out and saw Paul Sink back into defendant's car and try to push it backwards into the street. Defendant then pushed Sink's car up the driveway. When her mother came into the apartment, she consumed a glass of wine before the police arrived.

■ Defendant contends there was insufficient evidence to prove she drove on a public highway. Illinois' implied consent statute provides that a driver operating a motor vehicle on a public highway is deemed to have consented to undergo testing for alcohol in the bloodstream if requested to do so, or else receive a suspension of driving privileges. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1).) A highway is the "entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." (Ill. Rev. Stat. 1987, ch. 95½, par. 1—126.) Defendant argues that she was in a driveway, not on a highway.

■ Marianne Sink testified that defendant drove her car on Memorial Drive before turning into the driveway. Where evidence shows a person drove on a highway while under the influence of alcohol, such proof is sufficient under the statute, even where the driver is actually arrested on private property. (*People v. Kissel* (1986), 150 Ill.

App. 3d 283, 501 N.E.2d 963.) There was sufficient proof here that defendant operated a motor vehicle on a public highway just prior to the accident.

■ Defendant next contends there were not reasonable grounds to believe she had been driving under the influence of alcohol, and therefore, the officer could not request her to take a blood-alcohol test. (See Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(a)(1).) Reasonable grounds for such a request are to be determined by the officer's observations of the defendant, even where those observations are made after the driving occurs. *People v. Wolsk* (1983), 118 Ill. App. 3d 112, 454 N.E.2d 695; *People v. Bafia* (1983), 112 Ill. App. 3d 710, 445 N.E.2d 878.

■ In the present case, the arresting officer observed defendant staggering in her home, outside, and at the police station. The breathalyzer operator questioned defendant, who admitted drinking for three hours before the accident. Barrett noted an extremely strong odor of alcohol on her breath, slurred speech, and inability to walk without help. At her home, defendant argued with Barrett, initially refusing to accompany him to the station. "[S]he stated that she didn't have to come with us, that it was her driveway, that she could do whatever she wanted to. If there was a car in the driveway she could hit" it. Barrett had reasonable grounds to believe defendant was driving under the influence of alcohol and was justified in requesting that she take the blood-alcohol test. See *People v. Wolsk*, 118 Ill. App. 3d 112, 454 N.E.2d 695; *People v. Bafia*, 112 Ill. App. 3d 710, 445 N.E.2d 878.

■ Defendant next contends that her driver's license was improperly suspended because she did not refuse to take a breathalyzer test. A motorist impliedly consents to a blood-alcohol test under section 11—501(a). A trial court decision in an implied consent hearing will not be overturned on appeal unless it is contrary to the manifest weight of the evidence. (*People v. Doherty* (1986), 144 Ill. App. 3d 400, 494 N.E.2d 933.) Section 11—501.1 should be liberally construed to accomplish its purpose of protecting citizens of Illinois upon the highways. *People v. Doherty*, 144 Ill. App. 3d 400, 494 N.E.2d 933.

■ Failure to comply with instructions and provide an adequate sample of air volume constitutes a refusal to take the test. (*People v. Doherty*, 144 Ill. App. 3d 400, 494 N.E.2d 933.) Barrett testified that defendant put the mouthpiece to her lips, but continued talking, and therefore did not blow sufficient air into the machine. Instead, she threw down the mouthpiece, protested that she was a taxpayer and did not have to blow into the machine. Several breathalyzer reports

indicate defendant only blew air out of the side of her mouth. Her conduct constituted a refusal to take the test.

■ Defendant maintains that she had the right to be given a blood test because of her health problems. Refusal to submit to any single test constitutes a statutory refusal as to all three possible tests: breath, blood or urine. (*People v. Cofer* (1985), 135 Ill. App. 3d 283, 481 N.E.2d 351; *People v. Kiss* (1984), 122 Ill. App. 3d 1056, 462 N.E.2d 546.) Moreover, defendant failed every field sobriety test given and admitted she had been drinking for at least three hours. Such evidence of intoxication was consistent with defendant's other behavior in throwing down the mouthpiece and protesting. The trial court's finding that defendant refused the test is not contrary to the manifest weight of the evidence.

Defendant finally contends there was insufficient evidence that she was driving and driving under the influence of alcohol. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(a).) Marianne Sink testified she saw defendant's car pull into the driveway, and immediately went downstairs, finding defendant behind the wheel. Defendant admitted to Barrett that she hit the car. There was sufficient proof that she was driving.

●8 There was also sufficient proof of intoxication. When Barrett arrived several minutes after the accident, he noted the odor of alcohol, the inability to walk without support, and the slurred speech. Marianne Sink testified similarly. Barrett opined, based on his experience as a police officer, that defendant had been drinking most of the day. Her conduct was not consistent with someone who had consumed only one drink. Defendant admitted drinking for three hours. The trial court found the testimony regarding defendant drinking the wine not credible, and that defendant had made admissions in regard to how long she had been drinking that day.

Defendant maintains that Barrett did not observe her until half hour after the accident occurred, and after she drank some wine in her home. Sink testified that she was sure the accident occurred at about 7 p.m. because the "girl who the [surprise] party was for" was due at 7 p.m. and arrived about two minutes early. Barrett testified that the radio dispatch was at 7:04 p.m. He arrived at the scene within six minutes. On the police report he estimated that the accident occurred at 6:50 p.m. The court was entitled to reasonably infer from the evidence that defendant could not become so intoxicated after the accident by having one or two glasses of wine within the few minutes prior to Barrett's arrival at 7:10 p.m.

The State proved beyond a reasonable doubt that defendant was

guilty of driving under the influence of alcohol and of criminal damage to property.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

FREEMAN, P.J., and WHITE, J., concur.